# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STANFORD YOUGH,

      Petitioner,

v.

PAULA LORD, et al.,

      Respondents.

Civil Action No. 19-601 (SDW)

OPINION

**WIGENTON**, District Judge:

Currently before this Court is Petitioner's amended petition for a writ of habeas corpus. (ECF No. 6). Following an order to answer, Respondents filed a response to the petition (ECF Nos. 14, 16), to which Petitioner replied. (ECF No. 30). Petitioner thereafter filed two motions seeking the appointment of counsel. (ECF Nos. 32-33). For the following reasons, Petitioner's amended habeas petition is denied, Petitioner is denied a certificate of appealability, and Petitioner's motions seeking the appointment of counsel are denied as moot in light of the denial of the amended petition.

## I. BACKGROUND

In its opinion affirming Petitioner's conviction and sentence on direct appeal, the Supreme Court of New Jersey summarized the relevant factual background of this matter as follows:

> [Petitioner]'s conviction rests primarily on the trial testimony of Cesar Alva, who was robbed outside a U.S. Chicken restaurant in the city of Paterson in the early morning hours of October 10, 2005[.] At approximately 1:00 a.m., Alva entered the U.S. Chicken restaurant and was approached by [Petitioner] who asked him for fifty cents. Alva told [Petitioner] he did not have the change and placed his order. When paying the bill, Alva took out his wallet,

1

which was crammed with five-dollar bills totaling approximately $300.00. Alva attempted to shield the transaction and his wallet from [Petitioner]'s prying eyes. After Alva paid for his food, [Petitioner] approached him again, this time requesting a dollar. Alva said he did not have one, but placed fifty cents on a nearby shelf. [Petitioner] took the change and went outside where he conferred with two other men. From inside the restaurant, Alva could see [Petitioner] was pointing at him.

After picking up his order, Alva exited the restaurant and walked towards his car, which was parked a short distance away. Alva had not gone more than twenty feet when [Petitioner] and his two cohorts knocked him down and began pummeling and kicking him. Then [Petitioner] ordered the other two men to stop the assault and demanded that Alva turn over his wallet. After Alva did so, [Petitioner] rifled through the wallet, causing the bills to spill to the ground. The three men scrambled to collect the scattered five-dollar bills and argued over the division of the spoils. [Petitioner] returned to Alva his empty wallet, and the three men left the scene.

Immediately after the robbery, Alva drove to a nightclub where he had spent time earlier in the evening. There, he summoned the police. Shortly afterwards, Paterson Police Officer Ivan Hicks arrived and took down information from Alva about the robbery. Alva described the man who stalked and robbed him as "a black male, about 5'11", 200 pounds, bald head, very light complex[ion] . . . wearing a grey sweat suit, and in his 20's."[1]

One week later, on October 17, Alva went to the Paterson Police Department where he looked through as many as seven thick books of photographs. After twenty-five minutes, Alva selected a photograph of [Petitioner], stating that he had "no doubt" that [Petitioner] was the man who robbed him[.] Alva did not identify the other two men who assisted [Petitioner] in attacking him. Two days later, Alva gave a statement to Detective Dean Barone in which he confirmed his identification of [Petitioner].

. . . .

---

[1] As noted by the New Jersey Supreme Court, "[a]t the time of the robbery, [Petitioner] was forty-seven years old," but Alva's description was otherwise consistent with Petitioner's physical characteristics as Petitioner "is a light-skinned African American [who was listed by jail records at the time of trial as being] six feet tall and weighing 210 pounds." *State v. Yough*, 208 N.J. 385, 390 n. 2 (2011).

In addition to the above testimony on direct examination, Alva stated that he was certain that [Petitioner] was one of his attackers and identified him in court.   Before making that identification, Alva indicated that he had seen [Petitioner] in Paterson "ten, fifteen times.  Many times."[]  In the context of the questioning the clear impression was that those sightings occurred before the robbery.

On cross-examination, defense counsel highlighted the inconsistency between Alva's direct testimony and Alva's statement to Detective Barone two years earlier that he had observed [Petitioner] "two or three, maybe more" times before the robbery. The colloquy between defense counsel and Alva [which resulted was] the centerpiece of [Petitioner's direct] appeal[:]

[Defense Counsel]:  And do you remember saying two or three, maybe more?

[Alva]:  Yes.

[Defense Counsel]:  You remember saying two or three, maybe more?

[Alva]:  Yes, yes yes.

[Defense Counsel]:  But the Prosecutor asked you the same question; and you said, ten, maybe fifteen times?

[Alva]:  Because he – I see him many times on the street.  And he come and he point at me like this and talk to another people like this, like this, (makes growling sound) like this.

[Defense Counsel]:  And that explains the –

[Alva]: He followed me and – okay.

[THE COURT]:  No, no.  You can keep answering.  You – you can explain your answer.

[Alva]:  Well, another day I saw him, he was jogging.

[Defense Counsel]:  Your Honor, he's not –

[Alva]:  Very dressed –

[Defense Counsel]:  Your Honor –

3

[Alva]: – dressed very nice.  Then, he very nicely dressed.  He changed from anything.

[Defense Counsel]:  Your Honor, I'd like to be heard about –

[Alva]: And, when he – when he choked me –

[THE COURT]:  You want to be heard?

[Defense Counsel]:  Yes.

[THE COURT]:  Alright.

[Alva]: – and he –

[THE COURT]:  Alright.  Timeout, –

[Alva]:  –he go to the store he –

[THE COURT]: Mr. Alva.

[Defense Counsel]:  Yeah.  I want to be heard.

[THE COURT]: Ladies and gentlemen, please go in the jury room[.]

Out of the presence of the jury, defense counsel expressed concern that Alva was going to say that he had seen [Petitioner] since the robbery.  Counsel complained that such testimony would undercut his representations to the jury in his opening statement that Alva would see [Petitioner] for the first time ever in the courtroom. Counsel also accused the prosecutor of violating the State's discovery obligation by not advising him in advance that Alva might testify that he had seen [Petitioner] after the robbery.  The prosecutor denied knowing in advance that Alva would give testimony in conflict with his statement to Detective Barone.

The trial court then conducted a . . . hearing to determine exactly what testimony Alva would give to the jury about prior sightings of [Petitioner.]  At the hearing, Alva explained that he saw [Petitioner] ten or fifteen times, although it was unclear whether all of those times were *after* he gave his statement to Detective Barone. On many of the occasions after the robbery, [Petitioner] did not see Alva.   Although Alva never spoke to [Petitioner], one time [Petitioner] said to him, "Hello, buddy," and walked away to talk to other people.   Alva was not certain whether he had told the

4

prosecutor about his observations of and interactions with [Petitioner] following the robbery.  At no point in his [hearing] testimony did Alva mention that [Petitioner] had choked or threatened him in any encounter after the robbery.

At the conclusion of the hearing, defense counsel moved for a mistrial, claiming that Alva's testimony before the jury that [Petitioner] was "pointing at him at some other time" was the equivalent of "threatening him" and "implied witness tamper[ing]." Disagreeing with that characterization of Alva's testimony, the court denied the mistrial motion.  The court believed that there was an ambiguity in Alva's testimony before the jury and gave defense counsel the opportunity of exploring the conflict between Alva's statement to the police and his courtroom testimony.  Although defense counsel was given the option of opening the door into the arena of Alva's post-robbery sightings of [Petitioner], he declined to accept that invitation.  Indeed, defense counsel stated that if the prosecutor left the area alone, then he did not see a discovery violation "yet."

The Court then barred the prosecutor from questioning Alva about the times he had seen [Petitioner] since the robbery, noting that, in his opening statement, defense counsel told the jury that Alva had not seen [Petitioner] in the two years since identifying him as the robber.  The court specifically instructed Alva not to mention that he saw [Petitioner] after he gave his statement to the police.

The remainder of the cross-examination of Alva probed the merits of his identification of [Petitioner], including discrepancies between Alva's description of [Petitioner] at the time of the robbery and his appearance at trial.  No mention was made of what counsel learned during the . . . hearing – that, in fact, Alva had seen [Petitioner] on a number of occasions after the robbery.  Alva was not permitted to explain the conflict between his statement to Detective Barone and his in-court testimony.

On summation, defense counsel made the most of the conflict in Alva's testimony as it appeared to the jury.  Counsel argued that Alva told the police seven days after the robbery that he had only seen [Petitioner] "two or three times, maybe more" and then embellished his in-court testimony by stating that he had seen him ten to fifteen times.  Counsel added that Alva, having convinced himself of the correctness of his identification of [Petitioner] and his guilty, was invested in the outcome and wanted the jury to convict [Petitioner].  Neither defense counsel nor the prosecutor intimated that Alva had seen [Petitioner] at any time after the robbery.  Indeed,

5

the prosecutor did not even address the number of times Alva claimed to have observed [Petitioner] before the robbery. Moreover, in charging the jury on identification, the trial court instructed the jury that it "may also consider Mr. Alva's testimony that he knew of the perpetrator from having seen him *before* the incident." (Emphasis added). The trial court did not suggest that Alva had observed [Petitioner] *after* the robbery.

Defense counsel did not object to the court's jury charge or request any limiting instructions concerning the jury's use of Alva's testimony. After deliberating for approximately one hour, the jury convicted [Petitioner] of robbery.

*State v. Yough*, 208 N.J. 385, 389-394 (2011).

Following his conviction, Petitioner appealed, arguing chiefly that the trial court had erred in denying his motion for a mistrial. *Id.* at 394. A two-judge majority reversed Petitioner's conviction, finding that the jury "could have reasonably inferred from Alva's testimony that [Petitioner] had engaged in post-robbery acts of intimidation and witness tampering," which essentially amounted to the admission of improper and prejudicial evidence of other criminal acts while also improperly bolstering Alva's credibility. *Id.* The third judge on the Appellate Panel dissented, finding that Alva's fleeting comment regarding Petitioner pointing at or choking him were made while Alva, counsel, and the Court were talking over one another, and that that comment could "hardly be deemed prejudicial" as Alva had already testified that Petitioner had repeatedly struck him during the robbery and the jury could readily conclude that the alleged choking, to the extent they heard mention of it, referred to the robbery itself. *Id.* at 395. In light of the fleeting nature of the comment, the lack of a request for a curative instruction by counsel, and the surrounding facts, the dissenting judge, giving deference to the trial judge, found that there was no obvious failure of justice in denying Petitioner's mistrial motion. *Id.*

The state appealed to the New Jersey Supreme Court, and that Court reversed the Appellate Division's opinion as to Petitioner's claims related to Alva's testimony, reinstated Petitioner's

6

conviction, and remanded the matter to the Appellate Division for consideration of Petitioner's remaining appellate claims. *Id.* at 395-404. In so doing, the New Jersey Supreme Court noted that defense counsel's actions had invited Alva's testimony, including Alva's attempts to explain the discrepancy between his in and out of court statements, and that counsel's strategic choice not to push the issue or argue that the statements amounted to improper other crimes evidence strongly suggests that counsel "believed that he had constrained the post-robbery narrative to his advantage or that any possible error was actually of no moment." *Id.* at 298-401. The state supreme court likewise rejected Petitioner's argument on appeal that Alva's testimony amounted to improper other crimes evidence because Alva's statements regarding Petitioner's actions towards him – including the reference to choking – "could only have been understood (if at all) in the context of the robbery." *Id* at 401-02.

On remand, the Appellate Division affirmed Petitioner's conviction and denied Petitioner's remaining claims. (Document 16 attached to ECF No. 14). Petitioner thereafter sought and was denied certification by the New Jersey Supreme Court. (Document 17 attached to ECF No. 14). Following his appeal, Petitioner filed a petition for post-conviction relief, which was denied by the trial court in March 2016. (Document 7 attached to ECF No. 14). Petitioner appealed, and the denial of post-conviction relief was affirmed by the Appellate Division. (Document 20 attached to ECF No. 14). Petitioner was thereafter denied certification on PCR by the state supreme court. (Document 23 attached to ECF No. 14).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for the purposes of the statute where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute

that they were wrong."  *Id.*  Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## B.  Analysis

### 1.  Petitioner's ineffective assistance of counsel claim

In his first claim, Petitioner alleges that the state PCR courts improperly denied his claim that his trial counsel was ineffective in not pursuing a "claim of innocence" based on misidentification and in not presenting his "witness statements" to the jury at trial.  Although Petitioner provides very little elaboration as to the basis of this claim, it appears that Petitioner is attempting to challenge the denial of a hearing on his PCR claims based on counsel's alleged failure to investigate a proposed alibi defense in the form of an affidavit presented by Petitioner's sister.  In that affidavit, Petitioner's sister stated that she would come home from work "during the early morning (12:30 a.m. to 1:00 a.m.)" during October 2005, that Petitioner "would be at home to open the door and would always be there around the same time," and that he would normally thereafter go to bed and then work in the morning.  (Document 20 attached to ECF No. 14 at 3). Both the PCR trial court and Appellate Division rejected this claim without a hearing, finding that, even assuming the veracity of Petitioner's sister's statement, no alibi was actually suggested by the statement even if Petitioner had shown that he had provided this information to counsel prior to trial – a point which had not been proven.  (*Id.* at 3-4).  Specifically, the Appellate Division noted that Petitioner and his sister then resided just over a mile from the chicken restaurant, that the statement therefore placed Petitioner in the immediate vicinity of the chicken restaurant shortly

before the time of the robbery, and that nothing in Petitioner's sister's statement actually indicated when she may have seen him on the night of the robbery or established that, after seeing her, Petitioner could not have left without her noticing and walked to the restaurant in time to commit the robbery.  (*Id.*).  The Appellate Division thus found any alibi based on this weak statement to be, at best, "tactically unfeasible" and found that counsel could not have been ineffective in declining to pursue such a claim.  (*Id.*).

The standard applicable to claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984).  To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient.  This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).  To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable."  *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'"  *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).  A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances.  *Id.*  The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel.  *Id.*  In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense.  *Id.* at 692-93.  "It is not enough for the defendant to show

> that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.  Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief.  *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010).  "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Here, Petitioner challenges the alleged failure to investigate and pursue a proposed alibi claim based on his sister's affidavit.  As noted by the Appellate Division, however, that affidavit does not actually establish an alibi for Petitioner – at best, Petitioner's sister's statement speaks solely to Petitioner's normal practice of letting her in the house and going to bed between 12:30 a.m. and 1:00 a.m., a practice which, if followed on the night in question, would put Petitioner just over a mile from the scene of the robbery on the night in question, with ample opportunity to leave, walk or otherwise go to the chicken restaurant, and accost Alva.  Petitioner's sister's statement does not in anyway indicate what Petitioner did on the actual night of the robbery, nor would it prevent Petitioner from having committed the robbery if he followed the practice outlined in the statement on the night in question.  As noted by the Appellate Division, the proposed alibi was thus, at best, "tactically unfeasible," and Petitioner could not have been prejudiced by counsel's failure to pursue a baseless defense at trial.  Having reviewed the proposed alibi, the facts of this matter, and Petitioner's allegations, Petitioner has utterly failed to show that he was prejudiced by

counsel's failure to pursue the alleged alibi defense even had Petitioner informed counsel of that

defense prior to trial, and Petitioner's ineffective assistance claim on that basis must fail.  Petitioner

has thus failed to show that the state courts acted contrary to or misapplied *Strickland* in denying

him a hearing or relief on his ineffective assistance of counsel claim, and Petitioner is not entitled

to habeas relief on this basis.[2]

It also appears that through this claim, Petitioner is attempting to reassert his supplemental

PCR claim that counsel failed to investigate certain issues which he believes would have bolstered

his defense at trial.  As this Court has explained,

> [i]n *Strickland*, the Supreme Court held that trial counsel "has a duty
> to make reasonable investigations or to make a reasonable decision
> that makes particular investigations unnecessary.  In any
> ineffectiveness case, a particular decision not to investigate must be
> directly assessed for reasonableness in all the circumstances,
> applying a heavy measure of deference to counsel's judgments."
> 466 U.S. at 691.  "The failure to investigate a critical source of
> potentially exculpatory evidence may present a case of
> constitutionally defective representation," and "the failure to
> conduct any pretrial investigation generally constitutes a clear
> instance of ineffectiveness."  *United States v. Travillion*, 759 F.3d
> 281, 293 n. 23 (3d Cir. 2014) (internal quotations omitted); *see also
> United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that
> a complete absence of investigation usually amounts to ineffective
> assistance because a counsel cannot be said to have made an
> informed, strategic decision not to investigate); *United States v.
> Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).
>
> Where a Petitioner can show that counsel's failure to
> investigate amounts to deficient performance, he must still show
> prejudice.  In order to do so,

---

[2] Although it is not clear from Petitioner's initial habeas petition, Petitioner suggests that he also
wishes counsel had pursued a "claim of innocence" based on Alva having originally identified his
attackers as being in their twenties while Petitioner was well over forty at the time of the robbery.
Contrary to Petitioner's assertion, the defense presented by counsel at trial *was* a misidentification
defense based on Alva having mistakenly identified Petitioner as the perpetrator, and it thus fully
appears that counsel raised and vigorously pursued this exact defense.  Thus, even if Petitioner had
intended to raise an additional claim on this basis, such a claim would be without merit.

> a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.
>
> *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

In his supplemental PCR brief, attached to Petitioner's habeas petition, Petitioner only clearly identifies one piece of evidence other than his sister's alleged alibi statement which counsel could have discovered through further investigation – his work records indicating that, several hours after the robbery occurred, he went to work the following morning. Any such evidence, however, would have largely been immaterial – that Petitioner was at work the following morning in no way prevents him from having committed the robbery at 1:00 a.m. and thus would have provided no boon to his defense. The lack of an investigation into Petitioner's having been at work the following morning was thus not prejudicial to Petitioner, and fails to serve as an adequate basis for habeas relief.

**2. Petitioner's mistrial claim**

Petitioner next contends that the New Jersey Supreme Court erred in reinstating his conviction and that he should have been granted a mistrial based on Alva's testimony that he had seen Petitioner more times than originally indicated to the police.  Petitioner is thus challenging the New Jersey Supreme Court's ultimate determinations that Alva's testimony was admissible and that Petitioner was not ultimately prejudiced by the admission of the testimony as it neither suggested improper other crimes evidence nor indicated in context that Alva had seen Petitioner since the robbery.

Because "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *see Marshall v. Lonberger*, 459 U.S. 422, 438 (1983), claims challenging the admissibility of evidence are normally considered questions of state law which are not cognizable in habeas corpus.  *See Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); s*ee also Estelle v. McGuire*, 502 U.S. 62, 67-70 (1991); *Wilson v. Vaughn*, 533 F.3d 208, 213-14 (3d Cir. 2008), *cert. denied*, 556 U.S. 1170 (2009).  A habeas petitioner may therefore raise a habeas claim based on a state law evidentiary issue only where he can show that the admission of the evidence in question denied him Due Process under the Fourteenth Amendment by depriving him of the "fundamental elements of fairness in [her] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)).  "In order to satisfy due process, [Petitioner's] trial must have been fair, it need not have been perfect."

*Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)).  Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair."  *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

The Supreme Court has never held that evidence of "other crimes" must be excluded from criminal trials, nor that a limiting instruction as to such evidence is per se required for a conviction to pass constitutional muster; and has instead on several instances approved of the admission of such evidence.  *See generally Estelle*, 502 U.S. 62; *Greer v. Miller*, 483 U.S. 756 (1987); *Spencer v. Texas*, 385 U.S. 554 (1967); *see also Minett v. Hendricks*, 135 F. App'x 547, 553 (2005).  Thus, even where a claim involves alleged other crimes evidence, habeas relief will not be warranted unless the allegedly improper admission of such evidence was so unduly prejudicial that it rendered the petitioner's trial fundamentally unfair.  *Glenn*, 743 F.3d at 407; *Minett*, 135 F. App'x at 553.

In this matter, the New Jersey Supreme Court held that the admission of Alva's testimony regarding the numerous times he had seen Petitioner and having been pointed at or choked during one such event did not render Petitioner's trial unfair.  Because Petitioner's own counsel invited the colloquy on cross-examination, Alva had the right to explain his responses, and in context Alva's testimony did not suggest any other crime or viewings of Petitioner after the robbery insomuch as the jury likely inferred that the pointing and choking were part of the robbery itself as Alva's testimony suggested that Petitioner had both pointed to and attacked him during that event.  Having viewed the record of this matter, this Court concludes that the state Supreme Court's conclusions are well supported by the record, and thus are not contrary to the facts at hand.  The

15

record certainly indicates that the exchange with Alva was relatively brief, that the parties and court were talking over one another during the only arguably prejudicial portions – the mentions of pointing and choking – and that given the testimony which had already occurred, the logical conclusion, to the extent the jury heard these references, was that they referred to what had happened during the robbery itself.  Given the fact that Petitioner's own counsel thereafter used the discrepancies in Alva's statements to Petitioner's benefit during closing arguments, and as the state in no way sought to lead the jury to assume Alva had seen Petitioner after the robbery or had otherwise been attacked or intimidated after the robbery occurred, the admission of the testimony did not have the ability to lead the jury to an unjust result, and thus did not deny Petitioner a fair trial.  As Petitioner has failed to show that the conclusions of the New Jersey Supreme Court were contrary to or an unreasonable application of relevant Supreme Court precedent, and as those conclusions are well supported by the factual record of Petitioner's trial, Petitioner has failed to show that the denial of his motion for a mistrial or the reinstating of his conviction violated Petitioner's Due Process rights.  Petitioner is therefore not entitled to habeas relief on this claim.

**3.  Petitioner's challenge to Alva's identification**

In his petition, Petitioner also appears to be challenging the identification by Alva. Petitioner essentially seeks to argue that the identification was questionable because Alva initially said that the perpetrators were in their twenties, and then identified Petitioner, then in his mid-forties, as the chief perpetrator.[3]  To the extent Petitioner seeks to challenge the admission of

---

[3] This Court notes that it is not clear whether Petitioner's identification, arrest, and indictment challenges are properly exhausted insomuch as it is not clear that the Appellate Division construed Petitioner's pro se supplemental submission to raise any such claim and it appears that Petitioner's counsel raised the identification issue on direct appeal solely as a challenge to the sufficiency of the evidence presented at trial.  To the extent that these claims have not been properly exhausted

Alva's identification, any such challenge is utterly without merit.  Under applicable federal law, an out of court identification will only be inadmissible where that identification denies Due Process insomuch as it is the result of police procedure which was "unnecessarily suggestive and . . . [that suggestive procedure] create[d] a substantial risk of misidentification." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006); *see also Manson v. Brathwaite*, 432 U.S. 98, 116 (1977); *United States v. Anthony*, 458 F. App'x 215, 218 (3d Cir. 2012).  Even where such suggestive procedures were used, an identification will still prove admissible where the identification itself was reliable. *Anthony*, 458 F. App'x at 218 (quoting *Manson*, 432 U.S. at 114).  Here, Petitioner has raised no suggestive procedure, and it fully appears that Alva's identification had significant indicia of reliability – he saw Petitioner up close, in a lit restaurant, was very certain Petitioner was the perpetrator, Petitioner, in all but his estimated age, matched the description Alva had given following the robbery, and Alva had seen Petitioner on at least a few other occasions.  There is thus no basis for excluding Alva's identification suggested by the record, and Petitioner has presented no such basis.

To the extent Petitioner is instead raising the identification issue as an attempt to reiterate his appellate counsel's claim that Alva's identification and testimony did not amount to sufficient evidence of Petitioner's guilt to support his conviction, that claim fairs no better.  When a petitioner presents a claim challenging the sufficiency of the evidence provided at trial, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  A court

---

in the form currently presented, this Court denies them pursuant to 28 U.S.C. § 2254(b)(2) as they are clearly without merit.

sitting in habeas review may therefore overturn a conviction based on insufficient evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). "Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012). Under this "deferential federal standard," juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial" and federal courts must not "unduly impinge[] on the jury's role as factfinder" by engaging in "fine-grained factual parsing." *Id.* Here, the Appellate Division found that Alva's testimony was more than sufficient to set forth all of the elements of the robbery with which Petitioner was charged once the jury credited his statement. Having reviewed the trial testimony, this conclusion is clearly not a misconstrual of the evidence. As it is clear that a rational fact finder, based upon Alva's testimony, could conclude that Petitioner had robbed Alva on the night in question beyond a reasonable doubt, Petitioner has failed to show an entitlement to habeas relief on this claim. *Eley*, 712 F.3d at 847.

**4. Petitioner's challenges to his indictment and arrest**

In his remaining claims, Petitioner seeks to challenge his arrest and indictment, asserting that his indictment was "improperly" based on the testimony of a single witness – a police officer involved in the investigation – and his belief that "no arrest warrant" was issued prior to his indictment and arrest. Petitioner provides at best scant detail as to these claims, and does not clarify the bases for these challenges to any significant degree in his later filings. Because there is no federal right to a state criminal grand jury process, defects in grand jury proceedings resulting

18

in an indictment are generally not challengeable in habeas absent some other basis for finding a constitutional violation.  *See Wainwright v. Goode*, 464 U.S. 78, 86 (1983); *Page v. Hendricks*, No. 03-2029, 2005 WL 2665678, at *5 (D.N.J. Oct. 19, 2005).  Likewise, alleged errors in grand jury proceedings are rendered harmless by a subsequent guilty verdict from a petit jury.  *Page*, 2005 WL 2665678 at *5; *see also United States v. Mechanik*, 475 U.S. 66, 72-73 (1986).  Thus, even if there was some flaw in Petitioner's grand jury proceedings, such errors were cured by his ultimate guilty verdict, and the fact that Petitioner's indictment was based largely on the testimony of a police officer recounting the statement of Alva provides no basis for habeas relief.

Petitioner's vague allegation that no arrest warrant was issued similarly fails to set forth a valid basis for habeas relief.  Petitioner does not allege that he was arrested without a warrant, but instead finds fault with the lack of a direct warrant being issued for his arrest prior to his grand jury indictment proceedings.  It appears that he believes that the lack of an arrest warrant in some way suggests a flaw in the investigation which resulted in his indictment which he has not clearly described.  That Petitioner was not immediately arrested does not violate his rights.  Even if Petitioner had actually alleged that he was illegally arrested – a claim Petitioner has not made - any defect in Petitioner's arrest that did not result in the production of tainted evidence or an improper confession would fail to set forth any valid basis for habeas relief.  *See, e.g., Davis v. United States*, 424 F.2d 1061, 1063 (5th Cir. 1970).  As Petitioner has failed to allege, let alone show, that he was illegally arrested, or that the lack of issuance of a warrant for his arrest prior to his indictment in any way violated federal law, his arrest warrant related claim fails to set forth any valid basis for habeas relief.  As all of Petitioner's claims for relief are without merit, Petitioner's habeas petition is denied.  Because Petitioner's habeas claims will be denied on the

merits, Petitioner's post-reply requests for the appointment of counsel (ECF Nos. 32-33) are in turn denied as moot.

## III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because jurists of reason could not disagree with this Court's conclusions that Petitioner's claims are without merit, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and Petitioner is denied a certificate of appealability.

## IV.  CONCLUSION

For the reasons stated above, this Court denies Petitioner's amended habeas petition (ECF No. 6), denies Petitioner's motions seeking appointment of counsel (ECF Nos. 32-33) as moot, and denies Petitioner a certificate of appealability.  An appropriate order follows.

Dated: November 13, 2020                              *s/Susan D. Wigenton*
                                                      Hon. Susan D. Wigenton,
                                                      United States District Judge